Albert BROWN, Appellant,

v.

Clyde NUTSCH, Police Officer, Omaha Police Division, Douglas County, Nebraska; and Richard Alsager, Sergeant, Police Officer, Omaha Police Division, Douglas County, Appellees.

McKinley ROBINSON, Appellant,

v.

Edward VACLAVIK, DSN 7070, Robert Gavin, DSN 7765, Josephus Reynolds, DSN 4821, individually and in their official capacities as Detectives of the St. Louis, Missouri, Metropolitan Police Department, Appellees.

Nos. 79–1753, 79–1952.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1980.

Decided April 18, 1980.

Rehearing Denied May 14, 1980.

E. Michael Murphy, St. Louis, Mo. (argued), and Albert Brown, Lincoln, Neb., on brief, for appellant.

Patrick W. Kennison, Asst. City Atty., Omaha, Neb., for appellee, Nutsch, et al.

Thomas J. Ray, Asst. City Atty., St. Louis, Mo. (argued), and Jack L. Koehr, City Counselor, St. Louis, Mo., on brief, for appellee, Vaclavik, et al.

Before HEANEY, Circuit Judge, GIBSON, Senior Circuit Judge, and STEPHENSON, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

In these two cases, consolidated for review, Albert Brown and McKinley Robinson appeal the District Courts' dismissals, for failure to state a cause of action, of their damage suits brought under 42 U.S.C. § 1983 [1] alleging improper interstate extradition in violation of Article IV, § 2 of the United States Constitution, the extradition clause,[2] and 18 U.S.C. § 3182, the extradi-

---

**1.** 42 U.S.C. § 1983 (1976), *as amended by* Act of Dec. 29, 1979, Pub.L.No.96–170, 93 Stat. 1284, provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**2.** Article IV, § 2, cl. 2 of the United States Constitution provides:

A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

tion statute.[3] The threshold question involved in both of these cases is whether section 1983 provides a remedy for improper extradition. We find that the extradition clause and statute do provide individuals, subject to removal by state authorities from one state to another to face criminal charges, with rights, privileges, and immunities protected by the Constitution and laws of the United States. Accordingly, we reverse with respect to Robinson. However, due to the factual circumstances alleged in Brown's complaint, we affirm the District Court's dismissal for failure to state a cause of action.

## I.

McKinley Robinson was arrested on December 31, 1976, in East St. Louis, Illinois, by officers of the East St. Louis Police Department. In his complaint, Robinson alleges that on the same day he was "forcibly seized" and "forcibly transported" to the State of Missouri by three officers of the St. Louis Police Department in violation of his Constitutional rights and state extradition statutes.[4]

Albert Brown's complaint presents a different allegation. On November 15, 1977, Brown was returned to Omaha, Nebraska, from Arkansas to face charges stemming from a shooting incident in Omaha. In his complaint, Brown alleges that the two Omaha policemen who transported him into Nebraska had not demonstrated at Brown's preliminary hearing on his arrest, in Nebraska following extradition, that they had: (1) determined the validity of the extradi-

tion papers and of the signatures requesting and granting extradition; (2) shown that Brown was the same Brown named in the extradition papers; and (3) determined that Brown was a fugitive from justice. Brown was subsequently convicted of the charge for which he was extradited and he is not challenging that conviction.

## II.

In order for the court to dismiss a cause of action under section 1983, it must be convinced beyond doubt that Robinson and Brown can prove no set of facts which would establish that the police officers acted under color of state authority to deprive them of a right, privilege, or immunity secured by the Constitution and laws of the United States. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979). It is uncontested that both the St. Louis and Omaha police officers acted under color of state law. The threshold issue is whether the extradition clause and implementing extradition statute preclude the assertion of any rights, privileges, or immunities under the Constitution or laws by a party arrested or seized in the asylum state.

A line of lower court cases hold that the extradition clause and implementing statutes, both federal and state, are for the benefit of the state to bring fleeing felons

---

**3.** 18 U.S.C. § 3182 (1976) provides:

Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and

secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of arrest, the prisoner may be discharged.

**4.** Both Missouri and Illinois have adopted the Uniform Criminal Extradition Act. Mo.Ann. Stat., §§ 548.011–.300 (Missouri has added an additional provision, § 548.431) (Vernon Supp. 1980); Ill.Ann.Stat. ch. 60, §§ 18–49 (Smith-Hurd 1972).

to justice and that the alleged fleeing felon possesses no federal constitutional rights to protect against improper extradition proceedings.[5] The Supreme Court, in *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), dealt with the factual situation of a person forcibly abducted and kidnapped in an asylum state and returned to the demanding state for trial, which resulted in a conviction. Mr. Justice Black, speaking for a unanimous court, made it plain that the manner or method in which a fleeing felon was brought to trial from an asylum state does not invalidate his conviction under the due process clause of the fourteenth amendment, stating at 522, 72 S.Ct. at 511:

> This Court has never departed from the rule announced in *Ker v. Illinois*, 119 U.S. 436, 444 [7 S.Ct. 225, 229, 30 L.Ed. 421], that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a "forcible abduction." No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

■ Thus it is clear that force, improprieties or irregularities in the extradition process do not invalidate a subsequent conviction. However, the issue remains regarding whether or not other remedies or actions are open to a party who has been extradited against his will from an asylum state in a situation where the statutory procedures relating to extradition have not been observed.

Three United States Courts of Appeals have held that a failure to comply with extradition procedures is actionable under section 1983. *McBride v. Soos*, 594 F.2d 610 (7th Cir. 1979); *Wirth v. Surles*, 562 F.2d 319 (4th Cir. 1977), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978); *Sanders v. Conine*, 506 F.2d 530 (10th Cir. 1974). A number of United States District Courts, however, have found no cause of action, based on the rationale that violations of state imposed procedural safeguards in extradition situations derive from state law rather than federal law, though recognizing that conduct shocking to the conscience could give rise to a due process violation. *Raffone v. Sullivan*, 436 F.Supp. 939 (D.Conn.1977), *remanded mem.*, 595 F.2d 1209 (2d Cir. 1979); *Hines v. Guthrey*, 342 F.Supp. 594 (W.D.Va.1972); *Johnson v. Buie*, 312 F.Supp. 1349 (W.D.Mo.1970). *Contra, Pierson v. Grant*, 357 F.Supp. 397 (N.D.Iowa 1973), *aff'd on other grounds*, 527 F.2d 161 (8th Cir. 1975). This circuit left open the question in *Pierson v. Grant*, 527 F.2d 161, 163 n.6 (8th Cir. 1975). *See generally* Annot. 45 A.L.R.Fed. 871 (1979).

■ Before granting extradition, the governor of the asylum state is required to make two findings:

> [F]irst, that the person demanded is substantially charged with a crime against the laws of the State from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the governor of the State making the demand; and second, that the person demanded is a fugitive from the justice of the State the executive authority of which makes the demand.

---

5. In finding that a § 1983 cause of action for improper extradition did not exist, the court, in *Johnson v. Buie*, 312 F.Supp. 1349, 1350–51 (W.D. Mo. 1970), noted that the extradition clause and statute are not intended primarily to safeguard the fugitive from justice but rather to facilitate bringing to speedy trial fugitives from justice. *See also Michigan v. Doran*, 439 U.S. 282, 287, 99 S.Ct. 530, 534, 58 L.Ed.2d 521 (1979); *Biddinger v. Commissioner of Police*, 245 U.S. 128, 132–33, 38 S.Ct. 41, 42, 62 L.Ed. 193 (1917). This finding has led other courts to conclude that rights granted under federal provisions for extradition are granted to the state rather than to fugitives who might be the subject of extradition. *E.g., Siegel v. Edwards*, 566 F.2d 958, 960 (5th Cir. 1978); *Hines v. Guthrey*, 342 F.Supp. 594, 595 (W.D. Va. 1972).

The first of these prerequisites is a question of law, and is always open upon the face of the papers to judicial inquiry, on an *application for a discharge under a writ of habeas corpus.* The second is a question of fact, which the governor of the State upon whom the demand is made must decide, upon such evidence as he may deem satisfactory.

*Roberts v. Reilly,* 116 U.S. 80, 95, 6 S.Ct. 291, 299, 29 L.Ed. 544 (1885). The writ of habeas corpus is available to the accused to test the legality of the governor's determination on the factual issue. *Id.* The court considering the petition for the writ can only decide "(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." *Michigan v. Doran,* 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978). The prisoner, before being extradited, also has the right, enforceable through the writ of habeas corpus in the asylum state, to require that a neutral judicial officer of the demanding state has made a determination of reasonable grounds or probable cause that he has committed an offense. *Id.* at 289–90, 99 S.Ct. at 535–36.[6]

 Prior to his removal to the demanding state, the charged party can only challenge his confinement by the asylum state authorities through the writ of habeas corpus. This would require exhaustion of state remedies. A section 1983 action is not available. *See Preiser v. Rodriguez,* 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973). Once the prisoner has been returned to the demanding state, the writ of habeas corpus is no longer available to challenge his confinement upon grounds arising from conduct in the asylum state. *Mahon v. Justice,* 127 U.S. 700, 706–08, 8 S.Ct. 1204, 1207–08, 32 L.Ed. 283 (1888). Nor may the prisoner attack the validity of his conviction in the demanding state on the basis of improper extradition. *Frisbie v. Collins,* 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952); *Ker v. Illinois,* 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421 (1886). *But cf. United States v. Toscanino,* 500 F.2d 267, 271–79 (2d Cir. 1974) (supervisory power of federal courts and due process might require a federal court to divest itself of jurisdiction of prisoner forcibly kidnapped from foreign country in violation of extradition treaty).

 If the prisoner in the demanding state is not allowed to bring a section 1983 civil suit, he will be effectively foreclosed from any method of enforcing the extradition safeguards recognized by the availability of the writ of habeas corpus in the asylum state. The safeguards provided by the extradition clause and statute, enforceable through the writ of habeas corpus, are equally applicable to a section 1983 action. Both habeas corpus and section 1983 "serve to protect basic constitutional rights. * * * It is futile to contend that the Civil Rights Act of 1871 has less importance in our constitutional scheme than does the Great Writ." *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974).[7] Section 1983 provides an effective deterrent to illegal police conduct. It

---

**6.** The right may be founded in the fourth amendment, as well as in the extradition clause and statute. *Michigan v. Doran,* 439 U.S. 282, 293 n.3, 99 S.Ct. 530, 537 n.3, 58 L.Ed.2d 521 (1979) (Blackmun, J., concurring in result). *See generally* Note, *Interstate Rendition and the Fourth Amendment,* 24 Rutgers L.Rev. 551, 581 (1970).

**7.** *Cf. Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979) (reserving the question of the breadth of § 1983). *But cf. id.* at 645–46, 99 S.Ct. at 1930 (Powell, J., concurring) (§ 1983 encompasses only rights secured by the Constitution and laws providing for equal rights); *id.* at 672, 99 S.Ct. at 1944 (White, J., concurring in judgment) (§ 1983 encompasses not only federal constitutional rights but also rights secured by federal statutes unless there is a clear indication in a particular statute that its remedial provisions are exclusive); *id.* at 674, 99 S.Ct. at 1945 (Stewart, J., dissenting) (plain language of statute confers a cause of action for the deprivation under color of state law of "any rights * * * secured by the Constitution *and laws.*").

presents a viable alternative to complete exclusion from trial of illegally seized property and persons. *See California v. Minjares,* 443 U.S. 916, 925–928, 100 S.Ct. 9, 14–15, 61 L.Ed.2d 892, 896 (1979) (Rehnquist, J., dissenting from denial of stay). Furthermore, we have held that a section 1983 damage action is an alternative remedy when the writ of habeas corpus is unavailable, even when a state court has previously ruled on the legality of a search in a prior criminal suppression hearing. *McCurry v. Allen,* 606 F.2d 795, 799 (8th Cir. 1980), *cert. granted,* —— U.S. ——, 100 S.Ct. 1012, 62 L.Ed.2d 751 (1980). *See also Florida State Board of Dentistry v. Mack,* 401 U.S. 960, 91 S.Ct. 971, 28 L.Ed.2d 245 (White, J., dissenting from denial of certiorari). The availability of section 1983 is even more compelling when, through illegal state action, the prisoner has been denied any judicial review whatsoever. We hold that section 1983 provides a remedy for improper extradition in violation of the extradition clause and statute.[8]

▮▮▮ We think that Robinson and other individuals have the right not to be imprisoned or dealt with by the states in disregard of the safeguards provided by the Constitution and the statutes of the United States and applicable state statutes. A violation of these rights is cognizable under section 1983. However, we emphasize, as did the United States Court of Appeals for the Seventh Circuit, in *McBride v. Soos,* 594 F.2d at 613, that we intimate no view on

the merits of plaintiff's complaint nor any views on whether the plaintiff will be able to establish that he has suffered any damages as a result of the actions of the authorized agents of the state in not proceeding in accordance with the provisions of the extradition acts, both federal and state.[9] Where the alleged fugitive has been subsequently constitutionally convicted in the demanding state, something more than mere noncompliance with the extradition statutes would have to be shown to provide a basis for compensatory damages, since if there is probable cause to arrest that person and try him on charges pending in the demanding state and he is subsequently convicted, there appears to be no basis for damages absent special circumstances or physical harm.

### III.

▮▮▮ Robinson's complaint, alleging he was forcibly seized and transported from Illinois to Missouri by three St. Louis police officers, clearly contains a set of facts that, if proven, would establish a section 1983 cause of action. Brown's complaint, however, alleges that the individual Omaha police officers have a duty to make a positive showing at the preliminary hearing in the demanding state, following extradition, concerning the propriety of the extradition procedure. We disagree. While Brown does have a right to a determination of the propriety of extradition, this determination

---

**8.** We do not hold that section 1983 provides a remedy for every violation of state statutes implementing the constitutional clause and federal statute. Only those violations of state statutes which also violate the minimal requirements of the constitutional clause and the federal statute give rise to a section 1983 action. *See Paul v. Davis,* 424 U.S. 693, 699–700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *Vruno v. Schwarzwalder,* 600 F.2d 124, 130–32 (8th Cir. 1979).

**9.** With regard to the amount of damages to be awarded, the Supreme Court has recently stated that "[t]o the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages." *Carey v.*

*Piphus,* 435 U.S. 247, 256–57, 98 S.Ct. 1042, 1048, 55 L.Ed.2d 252 (1978); *see id.* at 257 n.11, 98 S.Ct. at 1049 n.11. The compensation principles found in the common law of torts provide useful guidance in determining damages, although the absence of an analogous common-law tort does not preclude recovery. *Id.* at 257–58, 98 S.Ct. at 1049–50. `Damages resulting from mental and emotional distress are recoverable to the extent actual injury was caused by the § 1983 violation. *Id.* at 263–64, 98 S.Ct. at 1052. In addition, due process violations are actionable for nominal damages without proof of actual injury. *Id.* at 266 & n.24, 98 S.Ct. at 1054 & n.24. *See also* Note, *Damage Awards for Constitutional Torts: A Reconsideration After Carey v. Piphus,* 93 Harv.L.Rev. 966, 971–74, 980–85 (1980).

is to be a judicial one, conducted on petition for the writ of habeas corpus in the asylum state according to the guidelines laid down by the Supreme Court in *Michigan v. Doran,* 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1979).[10] The police officers of the demanding state, carrying out a facially valid extradition, have no duty to make these determinations. *See Baker v. McCollan,* 443 U.S. 137, 143–47, 99 S.Ct. 2689, 2694–96, 61 L.Ed.2d 433, 441–43 (1979). Recognizing that *pro se* complaints by state prisoners are to be construed liberally, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), we are still unable to find that Brown states a cause of action that would entitle him to relief.

*Brown v. Nutsch,* No. 79–1753, is affirmed.

*Robinson v. Vaclavik,* No. 79–1952, is reversed and remanded.

---

10. *See* text, *ante,* at 762–763.