**Arthur J. McBRIDE, Plaintiff,**

v.

**Gary SOOS and Lamar Haney,
Defendants.**

**No. S 76–151.**

United States District Court,
N. D. Indiana,
South Bend Division.

April 30, 1981.

Robert L. Justice, Logansport, Ind., for plaintiff.

John D. Ulmer, Goshen, Ind., for defendants.

## MEMORANDUM

GRANT, Senior District Judge.

On September 2, 1976, plaintiff Arthur J. McBride filed a *pro se* civil rights action under 42 U.S.C. § 1983 against two members of the Elkhart County Sheriff's Department. The complaint alleges that the defendants unlawfully seized and transported McBride from Missouri to Indiana in violation of his constitutional rights[1] and state extradition statutes.[2]

---

1. Article IV, § 2, cl. 2 of the United States Constitution provides:

A person charged in any State with Treason, Felony, or other Crime, who shall flee

The complaint was dismissed by the district court on January 13, 1977, for failure to state a claim upon which relief could be granted. This action was reversed by the Court of Appeals for the Seventh Circuit which held that "a complaint which charges abuse of the extradition power by noncompliance with applicable law [including state law derived from federal law] states a cause of action under 42 U.S.C. § 1983." *McBride v. Soos*, 594 F.2d 610, 613 (7th Cir. 1979) (footnote omitted). A trial was held on the merits of the complaint on July 18, 1979.[3]

### Facts

On December 6, 1974, a warrant was issued by the Justice of the Peace of Elkhart Township County, Indiana, charging McBride with robbery by fear. That same day, McBride was arrested and jailed in Clayton, Missouri, based upon the Indiana warrant which had been relayed to Missouri officials. On December 10, 1974, the Elkhart County Prosecutor filed an information charging McBride with robbery by fear. On December 11, 1974, McBride was charged by indictment in the Elkhart County Superior Court with first degree murder for the December 1, 1974 death of Katherine Whitman. On December 12, 1974, the Magistrate Court of St. Louis County issued a fugitive warrant for McBride's arrest based upon the Indiana charges.

On January 7, 1975, the Governor of Indiana, pursuant to an application for requisition by the Elkhart County Prosecutor, issued a requisition authorizing and empowering his agents to demand and receive McBride from the proper Missouri authorities and return him to Indiana. After examining the extradition request, the Governor of Missouri issued a Governor's Warrant on January 16, 1975, for McBride's arrest and ordered his extradition. On January 24, 1975, the Elkhart Superior Court was informed that McBride had waived extradition. Defendants were then ordered by their superior to travel to Missouri and return McBride to Indiana for trial. Defendants were further told that McBride had waived extradition and that all necessary paperwork was in order. Upon arriving in Missouri, the defendants were met by members of the Clayton County Police Department, who also informed the defendants that McBride had waived extradition. On January 25, 1975, the defendants returned McBride to Indiana.

On November 7, 1975, McBride was convicted of first degree murder and is presently serving a life sentence in the Michigan City Prison in Michigan City, Indiana. As earlier stated, McBride's exclusive claim in this action is under 42 U.S.C. § 1983 and alleges that the defendants violated his civil rights by failing to follow proper state extradition procedures.

### McBride's Allegations

McBride contends that the defendants violated a number of procedural safeguards provided under the Missouri adaptation of the Uniform Criminal Extradition Act. First, that the defendants violated § 548.141 which provides that a person arrested "without a warrant upon reasonable information that the accused stands charged in the courts of a state 'for certain offenses' must be taken before a judge or magistrate with all practicable speed and complaint must be made against him under oath setting forth the ground for the arrest...." The evidence shows that McBride was arrested on December 6, 1974, but that a

from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.
This constitutional provision is implemented by federal statute. *See* 18 U.S.C. § 3182.

2. Both Missouri and Indiana have adopted substantially similar versions of the Uniform Criminal Extradition Act. *See* Mo.Ann.Stat. §§ 548.011–.300 (Missouri has added an additional provision, § 548.431) (Vernon); Ind.Code Ann. 35–2.1–2–3 (Burns).

3. The trial was held before Judge Allen Sharp. On August 27, 1979, Judge Sharp recused himself from any further actions in the case. All parties agreed to submit this case for a decision based upon the trial transcript.

hearing at which a fugitive warrant was issued was not held until December 12, 1974. McBride claims this six day delay violates § 548.141's "all practicable speed" requirement.

McBride's second claim is founded upon § 548.151 which provides that if at the § 548.141 hearing "it appears that the person held is the person charged with having committed the crime alleged and . . . that he has fled from justice," the arrested person can be committed by a warrant "for such a time not exceeding thirty days and specified in the warrant. . . ." McBride claims this provision was violated because the December 12, 1974 fugitive warrant failed to specify a defined period of commitment less than 30 days. It merely called for McBride to remain in the custody of Missouri police officials "until he . . . shall hence be discharged by due course of law." McBride also contends that his constitutional rights were violated by being held in custody beyond the initial 30 day period specified in § 548.141. Section 548.171 permits a judge or magistrate to recommit the arrested individual for an additional period of time not to exceed 60 days if the Governor's Warrant has not yet issued by the expiration of time specified in the fugitive warrant. McBride claims that no formal action under § 548.171 was ever taken during his approximately 50 day commitment.

McBride's final claim is that the defendants failed to comply with § 548.101 which expressly grants a prisoner subject to extradition a right to a pre-extradition hearing

at which he is informed of the receiving state's request for custody, his right to counsel, and his right to apply for a writ of habeas corpus challenging the custody request.[4] The prisoner is also permitted a "reasonable time" in which to apply for the writ. The opportunity to apply for a writ of habeas corpus is intended to allow the prisoner to challenge the legality of his arrest and the Governor's determination that all the statutory requirements for extradition have been met.

### Absence of Personal Involvement

■ Defendants argue that even if the procedural safeguards provided by Missouri law and set forth above were not followed, it would be improper to hold them liable since they did not become personally involved in this matter until January 24, 1976, when they were directed to travel to Missouri and return McBride. Most of the alleged violations occurred well before that date.

In *Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971), the Court of Appeals for the Seventh Circuit held that a defendant in a § 1983 action cannot be held liable unless the defendant is personally involved in the denial of a constitutionally protected right or that he has or is charged with having actual knowledge that subordinates under his control are causing or participating in the unlawful denial. *Accord, Stringer v. Rowe*, 616 F.2d 993, 1000–01 (7th Cir. 1980); *Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071, 1080 (7th Cir. 1978), *cert.*

4. Section 548.101 provides that:

No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of *habeas corpus.* When such writ is applied for, notice thereof, and of the time

and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state.

The importance of the protections set forth in § 548.101 was recently reinforced by the Supreme Court in *Cuyler v. Adams*, —— U.S. ——, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). In that case, the Court concluded that prisoners transferred pursuant to the provisions of the Interstate Agreement on Detainers are also entitled to the procedural protections of the Uniform Extradition Act if adopted by the State, including the right to the pre-transfer hearing contained in § 548.101 (Section 10 of the Uniform Criminal Extradition Act).

*denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979); *McDonald v. Illinois,* 557 F.2d 596, 602 (7th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977). Based upon this principle and under these circumstances, this Court holds that there was no personal involvement by the defendants in the alleged violations of §§ 548.141, 548.151, 548.171. Although the actions of the Missouri officials were instituted by information supplied from Indiana officials, the supplying of said information and the alleged violations themselves did not involve the defendants. The responsibility and duty to comply with these specific Missouri statutes rested entirely and exclusively with Missouri law enforcement officials. Defendants had no relationship to or involvement with the alleged failure to have taken McBride before a judge or magistrate with "all practicable speed" following his warrantless arrest, the failure of the judge to specify a defined period of commitment in the fugitive warrant or the failure of Missouri authorities to have a judge formally recommit McBride after expiration of the initial 30 day maximum term. In sum, McBride presents no evidence which shows that the defendants had any personal involvement in these alleged violations. Absent such involvement, defendants cannot be held liable.

■ This Court does, however, find sufficient personal involvement by the defendants in the alleged failure to provide McBride a pre-extradition hearing at which he would have an opportunity to file an application for writ of habeas corpus pursuant to § 548.101. This Court agrees with the defendants' basic premise that noncompliance with § 548.101 is the primary duty of Missouri law enforcement authorities. Defendants' argument is strengthened by

§ 548.111 which makes a misdemeanor the failure of any Missouri officer to comply with the provisions of § 548.101. But there existed a separate and independent duty with the defendants to ensure that McBride received the statutory protections available. Since Indiana extradition procedures are nearly identical to those in Missouri, defendants knew or should have known that § 548.101 needed to be satisfied before McBride could be extradited and if it was not satisfied, the defendants possessed the additional duty to confirm the fact that McBride voluntarily, intelligently and knowingly waived those protections. Defendants contend that McBride did waive extradition and all accompanying statutory safeguards, including § 548.101. This contention needs to now be addressed.

### Waiver

■ Missouri law expressly provides that an arrested person may voluntarily waive all extradition procedures if the waiver is made in the presence of a judge, and if the judge has informed the person of his rights under the statute.[5] Although a waiver signed in the presence of a judge may be the preferred method, § 548.260(2) contains a proviso that specifically states it is not the exclusive method of securing a valid waiver. It provides in part as follows:

> [T]hat nothing in this section shall be deemed to limit the rights of the accused person to return voluntarily and without formality to the demanding state, nor shall this waiver procedure be deemed to be an exclusive procedure or to limit the powers, rights or duties of the officers of the demanding state or of this state.

The evidence in this case establishes that McBride never signed a waiver in the pres-

5. Section 548.260(1) provides:

Any person arrested in this state charged with having committed any crime in another state or alleged to have escaped from confinement, or broken the terms of his bail, probation or parole may waive the issuance and service of the warrant provided for in sections 548.071 and 548.081 and all other procedure incidental to extradition proceedings, by executing or subscribing in the presence of a judge of any court of record within this state a writing which states that he consents to return to the demanding state; provided, however, that before such waiver shall be executed or subscribed by such person it shall be the duty of such judge to inform such person of his rights to the issuance or service of a warrant of extradition and to obtain a writ of *habeas corpus* as provided in section 548.101.

ence of a judge. Furthermore, a written waiver of any kind or before anyone was never obtained. Nonetheless, the defendants argue that McBride waived extradition orally and impliedly by his conduct. Whether an oral or implied waiver falls within the meaning and scope of § 548.-260(2) is a question this Court need not address since all of the evidence shows there was no waiver of any type by McBride.[6] Defendants' claim that "the evidence adduced at trial weighs heavily for the conclusion that the plaintiff voluntarily waived extradition" is without merit.

■ Although the Supreme Court has not defined waiver in the context of an extradition proceeding, the term has been defined for a broad variety of other constitutional rights. The generally applicable definition of waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The Supreme Court has repeatedly affirmed the principle that there is no presumption of acquiescence in the loss of fundamental constitutional rights. *See Fuentes v. Shevin*, 407 U.S. 67, 94 n.31, 92 S.Ct. 1983, 2001 n.31, 32 L.Ed.2d 556 (1972). Indeed, every reasonable presumption should be indulged against finding a waiver of constitutional rights. *Id.* Addressing the Sixth Amendment right to counsel, the Court stated:

> Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.

*Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). This same standard is applied in determining whether a guilty plea is voluntarily made. *Boykin v. Alabama*, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1711–1712, 23 L.Ed.2d 274 (1969).

In *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), the Supreme Court examined waiver of *Miranda* rights where the interrogation of juveniles was involved. It stated:

> Thus, the determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel. *Miranda v. Arizona*, 384 U.S. [436], at 475–477 [86 S.Ct. 1602, at 1628–1629, 16 L.Ed.2d 694].

*Fare, supra*, 442 U.S. at 724–25, 99 S.Ct. at 2571–2572.

■ Defendants make no affirmative showing of a waiver, express or implied, that satisfies the standards set forth above. They contend that their superior officer in Indiana who ordered them to go to Missouri had been told that McBride had waived extradition. They contend that the same superior officer informed them that McBride had waived extradition. They further contend that Missouri police officials informed them upon arrival that McBride had waived extradition. None of these statements, however, belong to McBride himself. They fail to establish a voluntary and knowledgeable relinquishment. Defendants also point to the actions of McBride. He never expressly or directly communicated to the defendants before leaving Missouri his desire to challenge the legality of his return. Defendants testified that McBride stated he was prepared to return to Indiana and get matters straightened out. This statement does not represent "an intentional relinquishment or abandonment" of rights in an extradition proceeding. A desire to return to Indiana and resolve the outstanding charges does

---

**6.** In *Pierson v. Grant*, 527 F.2d 161 (8th Cir. 1975), the court held valid a prerelease signed waiver executed by the plaintiff as a condition of his parole despite the fact the waiver was not signed before a judge or magistrate, and that the plaintiff was not specifically advised of his rights relating to extradition. In reaching this conclusion, the court relied upon the plain language of § 548.260(2).

not mean that McBride also waived his procedural protections. Although McBride was aware of some of those protections, he was not aware of all. More importantly, McBride was not fully aware of the nature of those protections. Absent such awareness, no waiver is valid. Defendants rely on the fact that "the plaintiff did not tell the defendants that he objected to being returned to Indiana." Failure to object, however, is not equivalent to an affirmative waiver. This principle is reinforced in this case since McBride expressly refused to waive extradition shortly after his December 6, 1974 arrest in Missouri. Therefore, in light of all the circumstances surrounding the transporting of McBride from Missouri to Indiana, this Court concludes that the defendants have failed to show that McBride affirmatively, voluntarily and understandingly waived extradition.

### Good Faith Defense

Defendants further contend that they "acted at all times, both subjectively and objectively, with the utmost good faith," and should not therefore be held liable for any procedural noncompliance. This Court agrees.

 It is the prevailing rule in this circuit that a plaintiff must prove malicious or reckless conduct in order to prevail on a claim under § 1983. Mere negligence is insufficient. *See Stringer v. City of Chicago*, 464 F.Supp. 887, 890 (N.D.Ill.1979), and cases cited therein.[7] Throughout the entire period in question, the defendants conducted themselves responsibly, prudently and with careful regard that McBride be afforded all statutory protections. Shortly after being arrested in Missouri, McBride refused to waive extradition. Upon learning of the refusal, Indiana officials initiated formal extradition procedures. On January 24, 1975, the defendants were expressly informed that McBride had waive extradition, and that all of the necessary paperwork was in order. Arriving in Missouri, they were again expressly informed that McBride had

waived extradition. Although these statements are insufficient to constitute an actual waiver, they do establish that the defendants were fully justified in presuming that a waiver had been obtained. This finding is further strengthened by McBride's statement that he was ready to return to Indiana and get matters straightened out. The statement's ambiguity, coupled with the events preceding it, merely confirmed the defendants' good faith and reasonable belief that everything was in complete order.

At the jail itself, there was nothing done or said that might have placed the defendants on notice that § 548.101 had not been followed or that McBride had not waived extradition. The defendants acted reasonably and appropriately in relying on the statements of their superior officer and assuming that Missouri officials had fully complied with all statutory requirements. Although the defendants should have sought confirmation of the waiver directly from McBride, the failure to do so does not constitute a violation under § 1983. The same is true for failing to verify that Missouri officials had complied with every statutory requirement. None of these inquiries are constitutionally or statutorily required and to impose liability under these circumstances upon these defendants would be totally inconsistent with the good faith immunity principles for police officers articulated by the Supreme Court in *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

Based upon all of these events, the defendants' conduct can hardly be characterized as negligent. There is no question that it falls well short of malicious or reckless. Therefore, this Court concludes that since the defendants acted at all times in good faith under apparently valid authority, no liability can be imposed.

### Absence of Actual Injury

Even should this Court find the defendants liable under § 1983, McBride would

---

7. The Supreme Court has yet to rule on whether a negligence standard is sufficient under § 1983. *See Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

only be entitled to recover nominal damages since he suffered no actual injuries from the defendants' conduct.

In *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court examined the elements and prerequisites for the recovery of damages for the denial of procedural due process. Before focusing on procedural due process violations specifically, the Court considered the remedial purposes § 1983 was intended to serve. The Court stated:

> The Members of the Congress that enacted § 1983 did not address directly the question of damages, but the principle that damages are designed to compensate persons for injuries caused by the deprivation of rights hardly could have been foreign to the many lawyers in Congress in 1871. Two other sections of the Civil Rights Act of 1871 appear to incorporate this principle, and no reason suggests itself for reading § 1983 differently. To the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages. [cite omitted].

435 U.S. at 255–57, 98 S.Ct. at 1048 (footnotes omitted).

To effectuate the "compensatory" purposes of § 1983, the Court held that the elements of damages and the prerequisites for their recovery in common law torts would provide the appropriate starting point for the inquiry under § 1983 as well. *Id.* at 257–58, 98 S.Ct. at 1049. The Court stated:

> In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law.

*Id.* at 258–59, 98 S.Ct. at 1050.

Applying these principles to procedural due process violations, the Court held that actual injury must be shown before a plaintiff may recover compensatory damages. The Court went on to state, however, that:

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, [cites omitted], *we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.*

*Id.* at 266, 98 S.Ct. at 1054 (footnote omitted) (emphasis added).

McBride contends that noncompliance with required extradition procedures constitutes both a substantive and procedural due process violation, and that *Carey*, therefore, is not totally determinative. To what degree the principle articulated in *Carey* applies to substantive due process violations is a question this Court need not consider since the defendants' actions, if unlawful, constitute a denial of procedural due process. The essence of McBride's action is noncompliance with Missouri extradition procedures. Indeed, violation of these procedures is the only material violation alleged by the plaintiff in his complaint. Furthermore, both the Seventh Circuit's decision in this case and the decision of the Court of Appeals for the Eighth Circuit in *Brown v. Nutsch*, 619 F.2d 758 (8th Cir. 1980), confirm the fact that a violation of extradition procedures should be characterized for purposes of § 1983 as a procedural due process violation. In each of these two most recent cases holding that abuse of the extradition power by noncompliance with required procedures states a cause of action under § 1983, the courts expressly cautioned that in finding a cause of action, they were not simultaneously finding compensable damages. In *McBride*, the court stated:

> We emphasize, however, that we intimate no views on whether plaintiff will ultimately be able to establish that he has suffered any damages as a result of the actions of Soos and Haney. *Cf. Carey v.*

*Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

*McBride,* 594 F.2d at 613.

In *Brown,* the court stated:

> However, we emphasize, as did the United States Court of Appeals for the Seventh Circuit, in *McBride v. Soos,* 594 F.2d at 613, that we intimate no view on the merits of plaintiff's complaint nor any views on whether the plaintiff will be able to establish that he has suffered any damages as a result of the actions of the authorized agents of the state in not proceeding in accordance with the provisions of the extradition acts, both federal and state.

*Brown,* 619 F.2d at 764 (footnote to *Carey* omitted).

Each of the quoted passages implies that the plaintiff will have a difficult task in establishing actual damages. If a showing of actual damages was not considered by the courts to be a prerequisite to recovery, it is unlikely the quoted passages would have been included. In addition, each opinion approvingly cites to *Carey* when it addresses the question of damages. Therefore, this Court concludes that noncompliance with required extradition proceedings must be characterized as a procedural due process violation and, thus, under *Carey,* the plaintiff must show actual injury.

After carefully reviewing the record in this case, this Court concludes that McBride has failed to make the necessary showing of actual injury. Although the Seventh Circuit correctly noted that McBride did not challenge the validity of his conviction in the district court nor in his appeal, 594 F.2d at 611 n.1, McBride now appears to contend that the conviction itself, although valid, should nevertheless be treated as a compensable actual injury. This contention is rejected.

■ It is well established that noncompliance with the extradition process does not invalidate a subsequent conviction. In *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), the Supreme Court reaffirmed its holding in *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed.2d 421 (1886), that the manner or method in which a fugitive is brought to trial from an asylum state does not invalidate his conviction despite the unlawfulness of the manner or method utilized. In *Frisbie,* the Court stated:

> This Court has never departed from the rule announced in *Ker v. Illinois,* 119 U.S. 436, 444 [7 S.Ct. 225, 229, 30 L.Ed.2d 421], that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a "forcible abduction." No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

342 U.S. at 522, 72 S.Ct. at 511–512 (footnote omitted). *Accord, Mosby v. Mabry,* 625 F.2d 809 (8th Cir. 1980) (extradition waiver obtained by fraud and deceit does not entitle appellant to a writ of habeas corpus); *United States v. Valot,* 625 F.2d 308 (9th Cir. 1980); *Cody v. Morris,* 623 F.2d 101 (9th Cir. 1980); *Brown, supra; Myers v. Rhay,* 577 F.2d 504 (9th Cir.), *cert. denied,* 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978); *Hunt v. Eyman,* 405 F.2d 384 (9th Cir. 1968), *cert. denied,* 394 U.S. 1020, 89 S.Ct. 1644, 23 L.Ed.2d 46 (1969) (improper extradition does not entitle appellant to a writ of habeas corpus). For the same reasons supporting the principle that noncompliance with the extradition process does not invalidate a subsequent conviction, this Court holds that a conviction following noncompliance with the extradition process is not an actual injury under § 1983.

■ Before a plaintiff may recover damages for a violation of a procedural due process right, the plaintiff must show that different consequences would have resulted

had proper procedures been followed. In *Carey, supra,* a group of students claimed they had been suspended from school without procedural due process. The Court of Appeals held that if the school board could prove on remand that "[the students] would have been suspended even if a proper hearing had been held," then the students would not be entitled to recover damages to compensate them for injuries caused by the suspensions. 545 F.2d 30, 32 (7th Cir. 1976). The Supreme Court agreed with the Court of Appeals on the basis that "an award of damages for injuries caused by the suspensions would constitute a windfall, rather than compensation, to [the students]," 435 U.S. at 260, 98 S.Ct. at 1050, if the students would have been suspended even had proper procedures been followed.

This same principle was followed in the context of an extradition proceeding in *Brown.* In that case the court stated:

Where the alleged fugitive has been subsequently constitutionally convicted in the demanding state, something more than mere noncompliance with the extradition statutes would have to be shown to provide a basis for compensatory damages, since if there is probable cause to arrest that person and try him on charges pending in the demanding state and he is subsequently convicted, there appears to be no basis for damages absent special circumstances or physical harm.

*Brown,* 619 F.2d at 764.

■ Despite plaintiff's arguments to the contrary, had the defendants and Missouri police authorities complied with the procedural protections provided under § 548.101, the Missouri courts would still have permitted the extradition. Section 548.101 does not arise until a Governor's Warrant is issued. Once issued, the prisoner must then be brought before an arraigning court and be permitted to petition for a writ of habeas corpus. At this first hearing, the prisoner has no right to challenge the facts surrounding the underlying crime or the lodging of the custody request. *See Cuyler v. Adams,* — U.S. —, 101 S.Ct. 703, 709 n.11, 66 L.Ed.2d 641 (1981). In *Michigan v.*

*Doran,* 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978), the Supreme Court defined the reviewing court's very limited and narrow scope of inquiry at the subsequent habeas corpus proceedings.

Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable.

The evidence in this case shows that these conditions would have been satisfied even had § 548.101 been completely satisfied.

McBride also makes vague allegations concerning physical, mental and emotional harm suffered as a result of the noncompliance with extradition procedures. With respect to these claims, there has been an insufficient showing of actual injury by the plaintiff.

■ In light of the above, McBride would not be entitled to any damages other than nominal even should this Court hold the defendants liable. McBride's additional claim for punitive damages would likewise be rejected since he fails to show the existence of any "aggravating circumstances" which would justify or warrant the imposition of such damages. *See Spence v. Staras,* 507 F.2d 554, 558 (7th Cir. 1974).

### Conclusion

This Court finds that the defendants acted in good faith throughout the entire matter in question and must not, therefore, be held liable under § 1983. Furthermore, even had liability been imposed, McBride failed to show any actual injuries suffered and would be entitled to recover only nominal damages.