985 F.2d 577
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dale Thomas WAUGH, Plaintiff-Appellant,
v.
Art CURTIS, Prosecutor, and Mike Dodds, Deputy Prosecutor,
Clark County Courthouse, Defendants-Appellees.
 No. 91-36205.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 16, 1992.*
Decided Jan. 21, 1993.
 
 Appeal from the United States District Court for the Western District of Washington, No. CV-91-5263-RJB Robert J. Bryan, District Judge, Presiding.
 W.D.Wash.
 REVERSED AND REMANDED.
 Before EUGENE A. WRIGHT, FLETCHER and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Dale Thomas Waugh appeals pro se the district court's sua sponte dismissal of his 42 U.S.C. § 1983 (1988) claim against Clark County prosecutors Art Curtis and Mike Dodds. The district court found Waugh's suit frivolous under 28 U.S.C. § 1915(d) (1988) because "[p]rosecutors acting in a quasi-judicial capacity are absolutely immune from [§ 1983] liability." We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 (1988). We reverse and remand for further proceedings.
 
 I.
 
 3
 Waugh was serving a sixty-day sentence for forgery in Oregon when Dodds sought to extradite him to prosecute him for forgeries committed in Washington. Waugh claimed that, with Curtis' knowledge, Dodds bypassed the usual constitutional and statutory extradition procedures and, without permission, used a rubber stamp of Washington Governor Booth Gardner's signature to secure Waugh's extradition.[1]
 
 
 4
 Waugh attempted to block extradition by filing a habeas corpus petition in the courts of the state of Oregon. After a hearing, the petition was denied--as was, apparently, Waugh's request to appeal. Waugh was then precipitously removed to Washington. After his Washington trial, Waugh filed the instant § 1983 suit.[2] The district judge dismissed the complaint on the ground that the "challenged actions of the prosecutors were quasi-judicial since they involved presenting the state's case for extradition to the court."
 
 
 5
 On appeal, Waugh argues that the prosecutors do not enjoy absolute immunity when they rubber-stamp the governor's signature to effectuate extradition. Waugh asserts that this practice circumvents the governor's primary role in the extradition process, and thus violates the Constitution and federal law.
 
 II.
 
 6
 Prior to the filing by defendants of any answer or other responsive pleading, the district court, on its own motion, dismissed Waugh's complaint as legally frivolous. We review dismissal under 28 U.S.C. § 1915(d)[3] for abuse of discretion. Denton v. Hernandez, 112 S.Ct. 1728, 1734 (1992). A complaint is legally frivolous when it "lacks an arguable basis ... in law." Neitzke v. Williams, 490 U.S. 319, 325 (1989).
 
 A.
 
 7
 The Constitution provides for the extradition of a person charged with a crime "on Demand of the executive Authority of the State from which he fled." U.S. Const. art. IV, § 2, cl. 2. The extradition statute enacted to implement these constitutional requirements, 18 U.S.C. § 3182 (1988), emphasizes that extradition is an executive function:
 
 
 8
 Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.
 
 
 9
 Id.; see also State ex rel. Boutwell v. Coughlin, 586 P.2d 1145, 1147 (Wash.1978) (extradition power "lodged exclusively with the executive authority of each state").
 
 
 10
 Although the extradition process is subject to various permutations,[4] the controlling federal statute requires that the governor of the "demanding state" submit a requisition demand to the governor of the "asylum state." This requisition demand is to be accompanied by either an indictment or an affidavit sworn before a magistrate, charging the fugitive with a crime. The underlying indictment or affidavit must be "certified as authentic" by the governor. 18 U.S.C. § 3182.
 
 
 11
 The prosecutor's role in the extradition proceeding is limited. That individual "shall present to the governor his written application for a requisition for the return of the person charged," compile other appropriate paperwork, and "certify[ ] that ... the ends of justice require the arrest and return of the accused to this state for trial and that the proceeding is not instituted to enforce a private claim." Wash.Rev.Code Ann. § 10.88.410 (West 1990 and Supp.1992). It is the governor who "shall demand ... from the executive authority of any other state" the return of the charged person.[5] See generally 18 U.S.C. § 3182; Wash.Rev.Code Ann. §§ 10.88.200-.930.
 
 B.
 
 12
 Waugh alleges that the requisition demand was never presented to Washington Governor Gardner. He maintains that the defendant prosecutors simply stamped the governor's signature on the requisition form, thereby executing an "end around" the established constitutional and statutory extradition framework. Waugh claims that this is clearly outside the scope of the prosecutor's authority.
 
 
 13
 Generally speaking, executive officials are accorded qualified immunity from suits for damages. Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982); see also Burns v. Reed, 111 S.Ct. 1934, 1939 (1991) ("[t]he presumption is that qualified ... immunity is sufficient to protect government officials in the exercise of their duties"). Absolute immunity, extended to those with "special functions," Butz v. Economou, 438 U.S. 478, 508 (1978), is recognized for only a handful of officials--the President of the United States, "judges, prosecutors, witnesses, and [others] performing 'quasi-judicial' functions," and legislators. Mitchell v. Forsyth, 472 U.S. 511, 520 (1985) (citing cases); Fry v. Melaragno, 939 F.2d 832, 835-36 (9th Cir.1991).
 
 
 14
 Absolute prosecutorial immunity is not unlimited in scope. As the Supreme Court recently reiterated in Burns, "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " Burns, 111 S.Ct. at 1939 (quoting Imbler v. Pachtman, 424 U.S. 409, 430, 431 (1976) (citation omitted)). The Court in Imbler noted that it had "no occasion to consider" whether immunity was appropriate "for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." Imbler, 424 U.S. at 430-31. We have held that a prosecutor enjoys absolute immunity when carrying out investigative functions pursuant to the preparation of the prosecutor's case, Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 679 (9th Cir.1984), but not when taking part, as a police officer would, in the preliminary gathering of evidence that may ripen into a prosecution. Gobel v. Maricopa County, 867 F.2d 1201, 1204 (9th Cir.1989).
 
 
 15
 Distinguishing between the prosecutor's function as an officer of the court, for which she is absolutely immune from suit for damages, and her function as an administrator, for which immunity--either qualified or absolute--may or may not attach, is indeed a "difficult" task, id. at 431 n. 33, but one which a court is not required to tackle alone. Imbler and its progeny have made it clear that "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Burns, 111 S.Ct. at 1939 (citing cases).
 
 
 16
 In this case, the district court sua sponte dismissed Waugh's complaint as frivolous, finding that "the challenged actions of the prosecutors were quasi-judicial since they involved presenting the state's case for extradition to the court." The record below reveals that Curtis and Dodds (represented by the same attorney) did not answer Waugh's complaint, nor did they file any motion or other substantive pleading. Thus, the district court, apparently, found the prosecutors absolutely immune from suit for damages when they allegedly usurped the gubernatorial extradition function by failing to present the appropriate materials to Governor Gardner and by using a rubber stamp to affix the governor's signature to the requisition demand.
 
 
 17
 This is an abuse of discretion. Waugh's complaint might not survive a motion to dismiss; if defendants ultimately are able to shoulder their burden of demonstrating why absolute immunity, or even qualified immunity, is justified, the case should be dismissed. Similarly, the complaint might not withstand a motion for summary judgment; if defendants establish, for example, that they did not bypass the governor (or that the governor's authority was delegable and was properly delegated and exercised) and that Waugh's allegations accordingly are baseless, summary judgment against Waugh would be appropriate.
 
 
 18
 Instead of permitting the suit to run its natural course, however, the district judge here accorded the prosecutors an unlimited absolute immunity. Moreover, the court misplaced the relevant burden, insisting that Waugh "show why defendants are not immune from liability" rather than requiring that Dodds and Curtis justify absolute immunity in the context of their participation in the extradition process.
 
 
 19
 As a matter of law, we are confident that Waugh's suit would be frivolous if it were focused on the prosecutors' decision to present an extradition application to the governor. That quasi-judicial function would appear to be well within the Imbler ambit, and such a suit would be analogous to the malicious prosecution action that Imbler forbids. Imbler, 424 U.S. at 424-28. Here, though, Waugh complains not about the decision to seek extradition, but the means allegedly employed by the prosecutors to effectuate that extradition. On appeal from a dismissal, we must assume that Waugh's allegations are true. Whether prosecutors are entitled to immunity when they circumvent constitutional and statutory extradition procedures by invading the governor's decisionmaking prerogative is a question that we must permit the district court to address first.
 
 III.
 
 20
 Because Waugh's claims do not lack an arguable legal basis, we find that the district court abused its discretion in dismissing Waugh's complaint as frivolous pursuant to 28 U.S.C. § 1915(d). We reverse and remand with directions that the district court order Dodds and Curtis to file an answer or other responsive pleading.[6]
 
 
 21
 REVERSED and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 According to Waugh, he is now serving a seven-year prison sentence in Washington for forgery, following conviction in Clark County Superior Court
 
 
 [2]
 What kind of action may lie is an intricate dance in the extradition context. While still in Oregon, Waugh could challenge extradition only through the writ of habeas corpus. Brown v. Nutsch, 619 F.2d 758, 763 (8th Cir.1980); see also Gee v. State, 912 F.2d 414, 416 (10th Cir.1990). Upon arriving in Washington, the writ was no longer available to challenge either his confinement in Oregon, Brown, 619 F.2d at 763 (citing Mahon v. Justice, 127 U.S. 700, 706-08 (1888)), or the validity of his conviction in Washington on the basis of improper extradition. Id. (citing Frisbie v. Collins, 342 U.S. 519, 522 (1952) (affirming district court's denial of the writ; "[t]here is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will")). However, Waugh may bring a § 1983 suit seeking redress for "improper extradition in violation of the extradition clause and statute." Id. at 764
 
 
 [3]
 Under § 1915(d), a court "may dismiss" plaintiff's complaint if it is satisfied that the complaint "is frivolous or malicious." 28 U.S.C. § 1915(d)
 
 
 [4]
 The Uniform Criminal Extradition Act ("UCEA"), where adopted, governs state extradition procedures, in conjunction with the overriding federal law. Michigan v. Doran, 439 U.S. 282, 288-89 (1978); White v. King County, 748 P.2d 616, 618 (Wash.1988). Washington has adopted the UCEA. White, 748 P.2d at 618
 
 
 [5]
 Thus, the district court's assertion that absolute immunity was applicable to the prosecutors' actions "since they involved presenting the state's case for extradition to the court" is, from what we can discern, based on a factually inaccurate premise
 
 
 [6]
 We alert the district court to the possibility of a res judicata problem. Waugh maintains that the state judge in Oregon did not permit him to appeal the denial of the state habeas petition. Waugh claims that immediately after the day-long hearing and the denial of the petition, he requested permission to appeal and that the judge denied the request. Two hours later, according to Waugh, he had been removed to Washington
 If this is true, it would seem that the unappealed decision of the Oregon court should not have res judicata effect, but, if appeal was not foreclosed, Waugh's claims may well be barred by res judicata. See Silverton v. Department of Treasury, 644 F.2d 1341, 1347 (9th Cir.) ("because of the nature of a state habeas proceeding, a decision actually rendered should preclude an identical issue from being relitigated in a subsequent § 1983 action if the state habeas court afforded a full and fair opportunity for the issue to be heard and determined under federal standards") (emphasis added), cert. denied, 454 U.S. 895 (1981); see also Allen v. McCurry, 449 U.S. 90 (1980).