Leo CRUMLEY, Plaintiff-Appellant,

v.

Roy SNEAD, Individually, and as Sheriff of Calhoun County, Alabama, et al., Defendants-Appellees.

No. 78–3624.

United States Court of Appeals, Fifth Circuit.

June 30, 1980.

Arthur Parker, Birmingham, Ala., for plaintiff-appellant.

Fred Ray Lybrand, Anniston, Ala., for defendants-appellees.

Before GODBOLD, TJOFLAT and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

Alabama Sheriff Roy Snead delivered Leo Crumley to Tennessee authorities while Crumley had a petition for a writ of habeas corpus challenging the validity of his extradition pending in Alabama state court. Crumley subsequently filed a civil rights action seeking damages [1] for interference

---

1. Crumley does not challenge the validity of his conviction in this action, nor does he seek release from prison.

with his right to challenge extradition through a habeas corpus hearing. The district court granted summary judgment for defendant Snead. We reverse.

The basic facts are undisputed. Roy Snead, Sheriff of Calhoun County, Alabama, arrested Leo Crumley for extradition to Tennessee on November 10, 1976. While he was being held in Alabama, Crumley filed a petition for a writ of habeas corpus in the circuit court for Calhoun County to test the validity of his extradition. Sheriff Snead, however, did not await the outcome of the habeas corpus proceeding.[2] Instead, he delivered Crumley to Tennessee law enforcement officials while the petition for habeas relief was still pending.

Crumley filed suit against Sheriff Snead,[3] seeking compensatory and punitive damages under 42 U.S.C. § 1983. Crumley alleged that defendant denied his right to challenge extradition by delivering him to Tennessee authorities while his habeas corpus petition was pending in state court. The district court, viewing as dispositive this Court's then-recent decision in *Siegel v. Edwards*, 566 F.2d 958 (5th Cir. 1978) (per curiam), granted defendant Snead's motion for summary judgment. Plaintiff instituted this appeal, challenging the propriety of the district court's order.

In order to prevail in a cause of action brought under 42 U.S.C. § 1983, plaintiff must establish that Sheriff Snead, acting under color of state law, deprived him of "rights, privileges, or immunities secured by the Constitution and laws."[4] The parties agree that Sheriff Snead was acting under color of state law. The crucial question on appeal is whether Snead deprived plaintiff of rights secured by the Constitution or the laws of the United States when he delivered and surrendered plaintiff to Tennessee authorities while plaintiff's habeas corpus petition challenging the extradition was pending in Alabama state court. In resolving this question, we must begin by examining the constitutional and statutory nature of extradition.

The Constitution imposes a duty on states to extradite fugitives.[5] Congress implemented this constitutional duty with the enactment of 18 U.S.C. § 3182.[6] The framers designed the extradition clause to enable states to "bring to speedy trial offenders against its laws from any part of the

2. This is not to intimate that Sheriff Snead acted in bad faith. That is an issue to be resolved at trial.

3. Crumley also sued Calhoun County. The cause of action against Calhoun County was dismissed for lack of jurisdiction. *See Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Plaintiff does not appeal that dismissal.

4. 42 U.S.C. § 1983 provides:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

5. U.S.Const. art. IV, § 2, cl. 2 provides:
   A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime.

6. 18 U.S.C. § 3182 provides:
   Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

land." *Biddinger v. Commissioner of Police,* 245 U.S. 128, 133, 38 S.Ct. 41, 43, 62 L.Ed. 193 (1917). By deemphasizing state boundaries and imposing the concepts of comity and full faith and credit found in other clauses of article IV, the framers sought to ensure the smooth functioning of the criminal justice system. *See Michigan v. Doran,* 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978). The framers also envisioned that the governors of the states would play the primary role in effectuating extradition. As the Supreme Court recently reiterated, "[i]nterstate extradition was intended to be *a summary and mandatory executive proceeding . . . .*" Id. at 289, 99 S.Ct. at 535 (emphasis added).

■ While the executive plays the primary role in extradition, the courts do have a limited role. Almost 100 years ago, in *Roberts v. Reilly,* 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885), the Supreme Court recognized that individuals have a federal right to challenge their extradition by writ of habeas corpus.[7] Admittedly, the scope of this habeas corpus challenge is narrow,[8] however, the right to the hearing is one secured by the Constitution and laws of the United States. Any denial of this right gives rise to a cause of action under 42 U.S.C. § 1983; for Section 1983 protects *all* rights, privileges, or immunities secured by the Constitution and laws of the United States.

■ Plaintiff Crumley had a federal right to challenge his extradition in Alabama state court. The summary judgment evidence establishes that defendant Snead, under color of state law, deprived plaintiff of that right. Summary judgment for defendant was improper in the case at bar.

The district court, in the grant of summary judgment, relied on this Court's opinion in *Siegel v. Edwards,* 566 F.2d 958 (5th Cir. 1978). A careful examination of that case, however, reveals that it does not mandate summary judgment in the case at bar.

In *Siegel* plaintiff appealed a grant of summary judgment for defendants on his civil rights action. Plaintiff had two grounds for his claim that his civil rights were violated. First, he contended that because Louisiana extradition papers were not signed by the governor and another state official, but instead were rubber stamped, extradition was improper. Second, plaintiff argued that since he waived extradition only as to burglary charges, he could not be tried on any other charges once he returned to Louisiana.

Plaintiff's first claim was easily dismissed. Louisiana extradition papers played absolutely no role in plaintiff's return to Louisiana because plaintiff voluntarily waived extradition. Since the rubber stamped papers were never used, they could not form the basis of a civil rights action. Plaintiff's second contention was also easily dismissed. As this Court noted, the law is well settled that fugitives, when returned to the demanding state, are not exempt from trial on any criminal act committed in that state.

In *Siegel*, the facts and longstanding law dictated that the grant of summary judgment against plaintiff on his civil rights action was proper. Any other discussion by this Court about the applicability of actions under Section 1983 to extradition proceedings was nothing more than *dicta.*[9]

---

7. The exact source of this right was not identified in *Roberts.* The Court intimated that article IV, § 2, cl. 2 and the statutory provision that today is 18 U.S.C. § 3182 are the bases. Regardless of the source, the right is certainly a federal one.

8. Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state;

(c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.
*Michigan v. Doran,* 439 U.S. 282, 290, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978).

9. Indeed, all the circuit courts that have considered the interaction between Section 1983 and extradition procedures have reached the same conclusion that this Court reaches today: A failure to comply with extradition procedures is actionable under Section 1983. *Wirth v. Surles,* 562 F.2d 319 (4th Cir. 1977); *McBride v.*

The district court erred in granting summary judgment for defendant. It is undisputed that Sheriff Snead was acting under color of state law when he delivered plaintiff to Tennessee authorities. Plaintiff has a right secured by the Constitution and laws of the United States to a pre-extradition habeas corpus hearing in the asylum state. It is undisputed that Sheriff Snead delivered plaintiff to Tennessee authorities while plaintiff's petition for a writ of habeas corpus was pending in state court. Application of the law to the summary judgment facts in the case at bar establishes that plaintiff's cause of action survives defendant's motion for summary judgment. The trial court's order is

REVERSED.

*Soos*, 594 F.2d 610 (7th Cir. 1979); and *Sanders v. Conine*, 506 F.2d 530 (10th Cir. 1974). *Contra Adams v. Cuyler*, 441 F.Supp. 556 (E.D. Pa. 1977); *Raffone v. Sullivan*, 436 F.Supp. 939 (D. Conn. 1977); *Hines v. Guthrey*, 342 F.Supp. 594 (W.D. Va. 1972); and *Johnson v. Buie*, 312 F.Supp. 1349 (W.D. Mo. 1970) (all holding that no cause of action is stated).