**UNITED STATES of America and David F. Paterson**

v.

**PENNSYLVANIA STATE POLICE, et al.**

**Civ. A. No. 79–2614.**

United States District Court,
E. D. Pennsylvania.

March 4, 1982.

Laurence Berk, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for plaintiff.

Carl Vaccaro, Deputy Atty. Gen., Com. of Pennsylvania, Philadelphia, Pa., for defendants.

## MEMORANDUM

GILES, District Judge.

Before me is defendants' joint Motion for Summary Judgment. Plaintiff, who is currently incarcerated at Delaware County Prison, brought the underlying *pro se* complaint against the Pennsylvania State Police and Trooper Joseph Price seeking compensatory and punitive damages for violation of 42 U.S.C. § 1983. He alleges defendants violated his civil rights under the Uniform Criminal Extradition Act (hereinafter "UCEA") and the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution by transporting him from Delaware to Pennsylvania without written consent and without waiver of his right to contest extradition. In addition, he alleges that his right to be free from cruel and unusual punishment under the Eighth Amendment was violated when he was transported while injured and under sedation.

In support of their motion for summary judgment, defendants assert that: the Eleventh Amendment bars claims against the State Police; the Extradition Clause of the Constitution and the Uniform Extradition Act are factually and legally inapplicable to plaintiff's case; plaintiff's action is barred by collateral estoppel or res judicata; and, in any event, defendant Trooper is

immune from liability for money damages. Plaintiff has responded to defendants' motion by claiming that the Uniform Criminal Extradition Act (UCEA) creates federal rights protected by section 1983, and that plaintiff's action is not barred by either estoppel doctrine.

Under Fed.R.Civ.Pro. 56(c), summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Applying these standards to the undisputed facts as set forth below, the motion for summary judgment as to the Pennsylvania State Police must be granted, but denied as to Trooper Price.

It is agreed that on March 2, 1979, plaintiff was involved in a shooting incident in Bethel Township, Delaware County, Pennsylvania, as the result of which he sustained various personal injuries. Plaintiff was taken by ambulance to Wilmington Medical Center in Wilmington, Delaware for treatment. He was then transported to Pennsylvania State Police Headquarters in a state police car driven by Trooper Price.

However, the parties disagree on the events surrounding plaintiff's transportation across state lines. Plaintiff claims Trooper Price and other unidentified Pennsylvania State Troopers entered the hospital, arrested him while he was heavily sedated, and transported him against his will by squad car back into Pennsylvania.

Defendants contend that plaintiff was not arrested at the Wilmington Medical Center. Rather, they assert that plaintiff voluntarily accompanied Trooper Price for purposes of pressing charges against the persons who caused his injuries. Allegedly, plaintiff was advised of his right to extradition proceedings, voluntarily waived those rights, and accompanied Trooper Price of his own free will to press criminal charges against his assailant.

It is agreed that subsequent to plaintiff's arrival at Pennsylvania State Police Headquarters, he was arraigned, and later tried and convicted of robbery and several related offenses surrounding the Pennsylvania shooting incident in proceedings before the Delaware County Court of Common Pleas. A suppression hearing was conducted before Senior Judge Louis A. Bloom and plaintiff's trial was conducted before Judge Robert F. Kelly.

Plaintiff does not challenge the validity of his conviction. He alleges only that the conduct of the officers in transporting him across state lines violated his rights under the UCEA and the United States Constitution, entitling him to recover damages under section 1983.[1]

■■ Plaintiff's claim against the State Police can be briefly treated. By virtue of the Eleventh Amendment federal courts are barred from entertaining suits by private parties against states and their agencies, unless the state has consented to the filing of such a suit. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Since the State Police are clearly a state agency, and there is no contention that it consented to this suit, there is no subject matter jurisdiction. Consequently, this claim must be dismissed.

■ Trooper Price, in his individual capacity, argues that summary judgment is appropriate as to him because the principles of res judicata and collateral estoppel bar relitigation of the issue of improper extradition, which he contends was decided against plaintiff in the state criminal proceedings. Although res judicata and collateral estoppel are applicable to section 1983 actions, *Allen v. McCurry,* 445 U.S. 958, 101 S.Ct. 1643, 64 L.Ed.2d 233 (1980), Trooper

---

1. The parties have not addressed themselves to the alleged constitutional violations under the Fourth, Sixth, Eighth and Fourteenth Amendments. Therefore, they are not ripe for disposition by summary judgment. I would note, however, that on the record before me, plaintiff's Eighth Amendment claim appears groundless, since he has not claimed that the alleged conduct occurred subsequent to his conviction. It has been held that where there is no conviction, an allegation that Eighth Amendment rights were violated is frivolous. *Belcher v. United States,* 511 F.Supp. 476, 482 n.5 (E.D. Pa.1981) (citing *Romeo v. Youngberg,* 644 F.2d 147 at 156 n.8 (3d Cir. 1980), *cert. granted,* 451 U.S. 982, 101 S.Ct. 2313, 68 L.Ed.2d 838 (1981).

Price has failed to establish the existence of the conditions required for the application of either doctrine.

■■ Res judicata may not be applied unless, *inter alia,* there is identity of the cause of action and identity of persons and parties to the action. *Kelly v. Warminster Township Board of Supervisors,* 512 F.Supp. 658, 662 (E.D.Pa.1981), *aff'd mem.,* No. 81–1660 (3d Cir. Feb. 25, 1982). These requirements are not satisfied in the instant case because "a criminal prosecution necessarily involves a different cause of action and different parties than any subsequent civil suit, even though both proceedings may [be] based on the same underlying incidents." *Murphy v. Andrews,* 465 F.Supp. 511, 512 (E.D.Pa.1979). Thus, res judicata principles cannot bar litigation of the issue of improper extradition in this case.

■ The broader doctrine of collateral estoppel can be applied to prevent the litigation in a civil suit of questions distinctly put in issue and directly decided in a prior criminal proceeding, provided the following criteria are met:

(a) the issue decided in the prior adjudication is identical with the one presented in the later action;

(b) there is a final judgment on the merits;

(c) the party against whom the doctrine is asserted was a party or in privity with a party to the other action;

(d) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in the prior action; and,

(e) the issue decided was essential to the judgment.

*Kelly v. Warminster Township Board of Supervisors,* 512 F.Supp. 658, 660 (E.D.Pa. 1981), *aff'd mem.,* 681 F.2d 806 (3d Cir.

1982); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). *See also Kauffman v. Moss,* 420 F.2d 1270, 1274 (3d Cir.) *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970) (issues essential to guilty verdict must be treated as having been determined by the judgment).

■ Here, it is clear that the question of improper extradition, even if actually decided, could not have been essential to the judgment in the criminal proceedings. It is well-established that "the power of a court to try a person for a crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' " *Frisbie v. Collins,* 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952). Whether plaintiff was transported in violation of extradition procedures was not an issue essential to the plaintiff's conviction, even assuming it had been litigated in the criminal proceedings. Therefore, the doctrine of collateral estoppel does not prevent plaintiff from litigating the propriety of his extradition.

### 1. *Plaintiff's Section 1983 Claim*

In order to prevail on his claim alleging violations of 42 U.S.C. § 1983, plaintiff must establish two essential elements.[2] First, the conduct complained of must have been done by some person acting under color of law; and second, such conduct must have subjected the complainant to deprivation of rights, privileges, or immunities secured to him by the Constitution or the laws of the United States. *See* 42 U.S.C. § 1983 (West Supp.1981).

The parties agree that Trooper Price was acting under color of law. The central issue then becomes whether, as a matter of law, plaintiff possessed any rights, privileges, or immunities secured to him by the

**2.** 42 U.S.C.A. § 1983 (West Supp.1981) provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Constitution or the laws of the United States which were infringed by his removal across state lines.

Plaintiff asserts that rights secured by state extradition statutes were violated by defendant's failure to comply with the state extradition procedures set forth in these statutes. The obligation imposed on the states to extradite fugitives upon demand of the state from which the fugitive has fled is rooted in the Constitution, Art. IV, § 2, cl. 2,[3] and is implemented by statute, 18 U.S.C. § 3182.[4] Under the current federal extradition statute: (1) the demanding state's executive authority must produce a copy of an indictment or an affidavit (sworn before a magistrate), certified as authentic by the governor or magistrate and charging the fugitive with a crime; (2) the executive authority of the asylum state must have the fugitive arrested and detained and notify the demanding state, accordingly; (3) the fugitive must be delivered to the agent of the demanding state or be discharged within thirty days of his arrest if no agent appears.

 In addition, the Supreme Court in *Roberts v. Reilly,* 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885), recognized that the governor of the asylum state must determine: (1) whether the person demanded is substantially charged with a crime and (2) whether the person demanded is a fugitive from justice from the demanding state. *Id.* at 95, 6 S.Ct. at 299. Individuals have a federal right to challenge the second determination by writ of habeas corpus. The prisoner, before being extradited, also has a federal right, enforceable through writ of habeas corpus in the asylum state, to require that a neutral judicial officer of the demanding state has made a determination of reasonable grounds or probable cause that he has committed an offense. *Michigan v. Doran,* 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978).

Realizing that the procedural guidelines in the federal statute needed explication, fifty-two states, including Pennsylvania and Delaware adopted the UCEA which provides additional extradition procedures. Under the UCEA as adopted in Pennsylvania, Price, as an agent of the demanding state, was required to follow certain procedures in obtaining a Delaware warrant from that state's governor.[5] Under Delaware law, plaintiff had the right to appear before a judge or justice of the peace to be informed of the demand for his surrender, his right to counsel and the right to apply

3. Article IV, § 2, cl. 2 of the United States Constitution provides:

> A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

4. 18 U.S.C. § 3182 (1976) provides:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to

such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

5. 42 Pa.Cons.Stat.Ann. 9144(a) (Purdon 1981) provides:

> Return of accused.—When the return to this Commonwealth of a person charged with crime in this Commonwealth is required the prosecuting attorney shall present to the Governor his written application for a requisition for the return of the person charged, in which application shall be stated the name of the person so charged, the crime charged against him, the approximate time place and circumstances of its commission, the state in which he is believed to be, including the location of the accused therein at the time the application is made, and certifying that in the opinion of the said prosecuting attorney the ends of justice require the arrest and return of the accused to this Commonwealth for trial, and that the proceeding is not instituted to enforce a private claim.

for a writ of habeas corpus.[6] Further, he had the right to waive those rights in writing but only after they had been fully explained to him.[7]

Whether a failure to comply with state extradition procedures is actionable under section 1983 has generated differing opinions. Some courts have reasoned that federal constitutional provisions for extradition as well as the federal or state statutes implementing them were enacted for the benefit of the states to facilitate the discovery and delivery of fugitives from justice. Since they were not intended primarily to safeguard the fugitive, there are no individual rights granted by the extradition statutes. *Hines v. Guthrey,* 342 F.Supp. 594, 595 (W.D.Va.1972); *Johnson v. Buie,* 312 F.Supp. 1349 (W.D.Mo.1970); *Crawford v. Lydick,* 179 F.Supp. 211 (W.D.Mich.1959), *aff'd* (per curiam) 280 F.2d 426 (6th Cir.), *cert. denied,* 364 U.S. 849, 81 S.Ct. 93, 5 L.Ed.2d 72 (1960).

■ The great weight of authority, however, is to the contrary. I agree with those courts which recognize that federal or state extradition procedures are enacted, at least in part, for the benefit of the fugitive, so that individual rights are, indeed, grant-

ed. *See Wirth v. Surles,* 562 F.2d 319, 322 (4th Cir. 1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978); *Sanders v. Conine,* 506 F.2d 530, 532 (10th Cir. 1974). *See also Ross v. Meagan,* 638 F.2d 646 (3d Cir. 1981) (*dicta*—plaintiff may be entitled to damages under § 1983 for knowing violation of the Pennsylvania UCEA); *Crumley v. Snead,* 620 F.2d 481 (5th Cir. 1980) (recognizing cause of action under § 1983 for violation of prisoner's right to challenge extradition via writ of habeas corpus); *Brown v. Nutsch,* 619 F.2d 758 (8th Cir. 1980) (recognizing cause of action under § 1983 for improper extradition under extradition clause and statute); *McBride v. Soos,* 594 F.2d 610 (7th Cir. 1979) (recognizing cause of action under § 1983 for violation of federal and state extradition procedures.) *See generally* Note *Extradition: Computer Technology and the Need to Provide Fugitives with Fourth Amendment Protection in Section 1983 Actions,* 65 Minn. L.Rev. 891 (1981).

Both the statutes of Pennsylvania and Delaware provide that certain fugitive rights must be observed before extradition. The right to be informed by a magistrate of the right to counsel, the right to test the arrest by petition for habeas corpus, and

**6.** 11 Del.Code Ann. § 2510 provides:
Rights of accused; habeas corpus.
No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him has appointed to receive him unless he is first taken forthwith before a judge of a court of record or a justice of the peace in this State, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel. If the prisoner or his counsel states that he or they desire to test the legality of his arrest, the judge or justice of the peace shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the Deputy Attorney General of the county in which the arrest is made and in which the accused is in custody, or to the Attorney General or the Chief Deputy Attorney General, and to the agent of the demanding state.

**7.** *Id.* § 2526 provides:
Waiver of requisition.

Any person arrested or detained for the commission of a crime in a foreign jurisdiction, may, after his rights to demand requisition papers have been fully explained to him, waive requisition and consent to return to the jurisdiction in which he is wanted. The waiver of requisition shall be in writing, and shall set forth that he voluntarily waives requisition and that his rights have been fully explained to and understood by him, which shall be signed by the prisoner and 3 other witnesses in his presence. The proper signing of such a waiver of requisition shall constitute ample authority for the sheriff, or other officer having the prisoner in custody, to deliver the prisoner to the duly authorized agent commissioned to receive him. The sheriff, or other officer having the prisoner in charge, before he surrenders the prisoner shall be satisfied that the agent is duly authorized and commissioned to receive the prisoner, and shall, unless the agent is a known peace officer, demand and retain the agent's warrant of authority, which he shall file and preserve together with the prisoner's waiver of requisition.

the right of non-waiver except by written consent, 11 Del.Code § 2510, § 2526, are requirements which "patently benefit the prisoner, not the state." *Wirth v. Surles,* 562 F.2d ·at 322 (quoting *Sanders v. Conine,* 506 F.2d 530, 532 (10th Cir. 1974)). Under 42 Pa.Cons.Stat.Ann. § 9144(a), the prosecuting attorney must comply with certain formalities in presenting a written application for the return of the person charged. While these procedures may benefit the state by expediting the extradition process, they also benefit the fugitive by assuring that he is properly described, identified and that his arrest is required by "the ends of justice."

Having decided that the UCEA secures certain pre-extradition rights to the plaintiff, I must decide whether those rights are federal in nature and thus protected by section 1983.

At least one court has held that state imposed extradition procedures derive from state rather than federal law, so that a cause of action does not arise under section 1983 for violations of these procedures. *See Raffone v. Sullivan,* 436 F.Supp. 939 (D.Conn.1977), *remanded mem.,* 595 F.2d 1209 (2d Cir. 1979) (recognizing, however, that conduct shocking to the conscience may give rise to a due process violation). *Cf. Hines v. Guthrey,* 342 F.Supp. 594 (W.D. Va.1972); *Johnson v. Buie,* 312 F.Supp. 1349 (W.D.Mo.1970) (no § 1983 cause of action for violation of federal extradition procedures where requirements of due process met.)

However, I find the better view to be that expressed by the Eighth Circuit Court of Appeals in *Brown v. Nutsch,* 619 F.2d 758, 764 n.8 (8th Cir. 1980). In that case, the court recognized a cause of action under section 1983 for violations of the extradition clause and statutes, stating that "individu-

als have the right not to be imprisoned or dealt with by the states in disregard of the safeguards provided by the Constitution and the statutes of the United States and applicable state statutes." *Id.* at 764. The court narrowed the scope of its holding by stating that not "[e]very violation of state statutes implementing the constitutional clause and federal statute" . . . gives rise to a § 1983 cause of action. *Id.* at 764 n.8. "Only those violations of state statutes which also violate the minimal requirements of the constitutional clause and the federal statute give rise to a section 1983 action." *Id.*

Thus, where violations of the UCEA also violate the minimal requirements of the Constitution and 18 U.S.C. § 3182, a section 1983 cause of action is stated. *Cf. McBride v. Soos,* 594 F.2d 610 (7th Cir. 1979) (characterizing UCEA rights as derived from federal law and recognizing § 1983 cause of action for violation of state and federal extradition procedures. *Id.* at 613); *Wirth v. Surles,* 562 F.2d 319 (4th Cir. 1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978) (where violation of state UCEA procedures causes deprivation of rights protected by the Constitution and federal statutes, § 1983 cause of action is stated. *Id.* at 322); *Sanders v. Conine,* 506 F.2d 530 (10th Cir. 1974) (recognizing § 1983 action for violation of extradition power by non-compliance with "applicable law," not distinguishing between federal and state procedures, *Id.* at 532).

Based on the above authority, I hold that to the extent that plaintiff has alleged facts which are in dispute and which, if proved, would constitute a violation of state extradition statutes, as well as a violation of the extradition clause and its implementing federal statute, he has stated a cause of action under § 1983.[8] Since the

8. The recent Supreme Court decision in *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981) provides further support for the view that the UCEA implicates federal rights. In that case the court held that the Interstate Detainer Agreement (hereinafter "IDA"), which provides for the temporary return of prisoners to face federal prosecution in

the demanding state, established federal rights under section 1983. The court's holding was expressly limited to the IDA, *id.* at 442 n.10, 101 S.Ct. at 708 n.10. However, the rationale may apply by analogy to the UCEA. The *Cuyler* court held that the IDA was federal law under the compact clause because (1) Congress had consented to passage of the IDA by virtue

essential facts surrounding plaintiff's interstate transportation are disputed, I cannot grant summary judgment as to the section 1983 claim.[9]

█ Trooper Price further asserts that, as a matter of law, he is qualifiedly immune from suit because he acted in good faith in his dealings with plaintiff. As a state official acting within the scope of his official duties, defendant Price is entitled to qualified immunity from damage suits. *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90 (1974). Such immunity varies in scope,

> The variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

*Id.* at 247–48, 94 S.Ct. at 1691–92. *See Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967) (defense of good faith and probable cause available to police officers in section 1983 action). The qualified immunity defense has two elements which a defendant must prove. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Graham v. United States,* 528 F.Supp. 933, 939, (E.D.Pa. 1981). First, he must satisfy a subjective test of good faith which requires that a defendant act sincerely with a good faith belief that his actions are proper. *Wood v. Strickland,* 420 U.S. at 322, 95 S.Ct. at 1000. Second, he must satisfy the objective element by proving that he neither knew nor reasonably should have known that his actions violated plaintiff's rights. *Id.*

█ Defendant has apparently attempted to satisfy these tests by submitting an affidavit stating that at all relevant times, he acted "without malice toward Mr. Paterson and with a belief that [his] actions were proper and lawful." Defendant Price further states that in his dealings with Mr. Paterson, he had "no intention to violate [Mr. Paterson's] constitutional rights." Affidavit of Joseph A. Price at 2. This affidavit fails to establish that defendant Price is entitled to qualified immunity as a matter of law. It fails the subjective prong of the test because it merely states legal conclusions and does not respond specifically to the activities alleged in the complaint. It also fails the objective test, since it does not set forth any basis to support the conclusion that defendant neither knew nor should reasonably have known that his actions violated plaintiff's rights. Thus, defendant Price is not now entitled to summary judgment on the basis of a defense of qualified immunity.

## II. CONCLUSION

For the reasons set forth above, I find that summary judgment is granted on behalf of defendant Pennsylvania State Police and is denied as to defendant Trooper Price.

An appropriate order follows.

---

of the Crime Control Consent Act of 1934, 4 U.S.C. § 112(a) (1976), and (2) the IDA covers an area that is appropriate for federal legislation. *Id.* at 441–42, 101 S.Ct. at 707–08. Arguably, these two requirements are also satisfied as to the UCEA.

9. My holding in no way suggests a view as to whether plaintiff will ultimately be able to establish that he has suffered any damages as a result of Trooper Price's alleged conduct. As the Eighth Circuit stated,

> Where the alleged fugitive has been subsequently constitutionally convicted in the demanding state, something more than mere noncompliance with the extradition statutes would have to be shown to provide a basis for compensatory damages, since if there is probable cause to arrest that person and try him on charges pending in the demanding state and he is subsequently convicted, there appears to be no basis for damages absent special circumstances or physical harm.

*Brown v. Nutsch,* 619 F.2d at 764. *See also McBride v. Soos,* 594 F.2d 610, 613 (7th Cir. 1979) *Cf. Carey v. Piphus,* 435 U.S. 247, 97 S.Ct. 1642, 55 L.Ed.2d 252 (1978).